UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:16CV33-GCM

| | |
|---|---|
| **RODERICK TIM PARKER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter, Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council.

Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays v. Sullivan*, *supra*.

## IV. Substantial Evidence

## A. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. The undersigned finds that it is.

## B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5) Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v). In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

**C.    The Administrative Decision**

In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ found that Mr. Parker had not engaged in substantial gainful activity since March 31, 2011, the date he alleged his disability began. (Tr. 26.) At step two, the ALJ found that Mr. Parker had the following severe impairments: seizure disorder and osteoarthritis of the right knee. (Tr. 27.) At step three, the ALJ found that Mr. Parker did not have an impairment or combination of impairments that met or medically equaled a Listing. (Tr. 30.)

Before proceeding to step four, the ALJ determined that Mr. Parker had the residual functional capacity to perform light work, further limiting him to: no work "requiring the use of his lower right extremity for pushing or pulling, or operation

4

of foot controls"; occasional squatting, kneeling, and crouching; and no jobs requiring exposure to unprotected heights or dangerous machinery. (Tr. 30-38.)

At step four, the ALJ found that Mr. Parker could no longer perform his past relevant work. (Tr. 38.) At step five, the ALJ found that, based on Mr. Parker's age, education, work experience, and residual functional capacity, as well as testimony from a vocational expert, Mr. Parker could perform jobs existing in significant numbers in the national economy, including marker, final inspector, and router. (Tr. 39-40.) As a result, the ALJ found that Mr. Parker was not disabled under the Act. (Tr. 40.)

**D.     Discussion**

**1.     Plaintiff's Assignments of Error**

Plaintiff has made the following assignments of error: whether the ALJ erred in failing to adopt, without explanation, the RFC findings in the North Carolina Department of Health and Human Services ("NCDHHS") Medicaid benefits award; whether the ALJ erred by failing to include any RFC limitations consistent with the limitations alleged in Mr. Parker's adult function report and in his mother's third party function report, both of which were assigned great weight by the ALJ; and whether new and material evidence necessitates a remand for further consideration. Plaintiff's assignments of error will be discussed seriatim.

## 2. First Assignment of Error

Mr. Parker was awarded Medicaid benefits on September 17, 2013. In the decision awarding benefits, Ms. Garrou, a Hearing Officer for the NCDHHS, determined that Mr. Parker was limited to sedentary work, but ultimately concluded that he was disabled. Her RFC findings limited Mr. Parker to occasionally lifting 20 lbs., frequently lifting 10 lbs., standing and walking for 4 hours in an 8 hour workday, and occasionally stooping, crouching, and crawling. He was also limited to no concentrated exposure to heights and workplace hazards.

The ALJ took judicial notice of the NCDHHS decision, but correctly noted that the decision was not binding on the Social Security Administration. (Tr. 32.) He gave the decision "some weight, but not great weight." (Tr. 38.)

Mr. Parker argues that the ALJ should have provided additional explanation of the reasons he gave limited weight to the decision of the NCDHHS. This argument fails to take into account the ALJ's discussion of substantial evidence in support of his decision. (Tr. 30-38.) It also fails to take into account the ALJ's decision to incorporate restrictions set forth in the NCDHHS decision and even go beyond some of those restrictions. (Tr. 30, 38.)

As noted, decisions on disability from other agencies are not binding on the Commissioner, though they are entitled to consideration. *DeLoatche v. Heckler*,

715 F.2d 148, 150 n.1 (4th Cir.1983); 20 C.F.R. §§ 404.1504, 416.904; Social Security Ruling ("SSR") 06-3p, 2006 WL 2329939, at *6-7. Here, the ALJ identified and discussed the NCDHHS decision in detail. After laying out the relevant standard for evaluating disability decisions from other agencies (Tr. 32), the ALJ decided to give only some weight to the decision from the NCDHHS. (Tr. 38.) He specifically acknowledged, and adopted, the state agency's finding that Mr. Parker could lift up to 20 pounds occasionally (Tr. 38, 342), stating that that exertional limitation was "more reasonable in light of [Mr. Parker]'s limitations." (Tr. 38.) He then incorporated this exertional restriction into his residual functional capacity finding: he found Mr. Parker could tolerate light work, which calls for lifting and carrying up to 20 pounds occasionally. (Tr. 30; see 20 C.F.R. §§ 404.1567(b), 416.967(b).) The ALJ also adopted the restriction to "occasional" postural activities in the NCDHHS decision. (Tr. 30, 342.) The ALJ then moved beyond one of the restrictions in the NCDHHS decision by precluding all exposure to hazards, as opposed to the "concentrated exposure" the NCDHHS found. (Tr. 30, 342.) Accordingly, there is no merit to Mr. Parker's contention that the ALJ did not incorporate restrictions from the NCDHHS decision.

The only arguable distinction between the two findings is that the NCDHHS decision restricts Mr. Parker to four hours of combined standing and walking per

day. The evidence in the record supports the ALJ's decision not to adopt this conclusion. (Tr. 38.) For example, opinion evidence from the state agency consultants, which the ALJ gave some weight, stated that Mr. Parker could sit, stand, or walk for up to six hours in an eight-hour workday. (Tr. 110, 121.)

Furthermore, Mr. Parker's subjective allegations of disabling pain were, as the ALJ pointed out in his decision, non-existent or mild at the alleged onset date and inconsistent in more recent records. (Tr. 34, 381, 383, 385, 386, 434, 441, 463, 469-470.) As the ALJ also discussed at length in his decision, Mr. Parker's complaints about knee pain were not consistent with the objective medical evidence, which did not show acute knee problems that might have caused the pain and limitations Mr. Parker claimed. (Tr. 34, 369, 448, 453.) Accordingly, the record supports the ALJ's decision to give some weight, but not controlling weight, to the NCDHHS decision.

3. **Second Assignment of Error**

Next, Mr. Parker claims that the ALJ should have explained why, having given "great weight" to subjective written reports from Mr. Parker and his mother, he did not adopt all of the limitations claimed in those report. In particular, Mr. Parker claims that the ALJ should have adopted—or explained why he did not

adopt—limitations arising out of side effects from medication, dizziness and lightheadedness, low energy, and problems with memory.

While the ALJ gave the written reports "great weight," he did not purport to adopt them in their entirety. For example, despite the decision to give the reports great weight, the ALJ noted that the reports actually undermined Mr. Parker's claims of disabling knee pain. (Tr. 35.) The record supports that finding. As the ALJ pointed out in his decision, Mr. Parker did not attribute any limitations to knee pain, he mentioned only his seizure disorder. (Tr. 35, 272, 274, 276.) Despite those limitations, Mr. Parker acknowledged that "he was able to perform his personal care without difficulty or assistance, and said he was able to do household chores, prepares simple meals, and do [some] yard work." (Tr. 35, 271-272.) Mr. Parker also said that "he could go shopping, watch television, read, work on a computer, and manage his personal finances." (Tr. 35, 272-273.) All of this supports the ALJ's decision not to adopt all limitations from these reports.

The limitations identified in Mr. Parker's motion do not change this result. He claims that the ALJ should have addressed limitations attributable to side effects from his medication. The record offers no support for such limitations. Aside from Mr. Parker's own statements in the report (Tr. 276), which the ALJ did not adopt, there is no evidence of significant side effects from medication. Mr.

9

Parker did not tell his treating physicians about any side effects, and none are stated in examination notes. (Tr. 398-399, 434- 440, 442-447, 448-453, 454-456, 462-464, 468-471.) He did not testify to any side effects during either administrative hearing. (Tr. 61-90.) The state agency consultants did not find any evidence of side effects from medication. (Tr. 102, 108-109, 111.) There is not even any indication of side effects in the newly submitted evidence Mr. Parker seeks to introduce. The statements regarding side effects in Mr. Parker's written report, dated November 28, 2011, also are inconsistent with Mr. Parker's statement to Dr. Hatharasinghe, dated February 29, 2012, that he was not on any medication and that his seizures had only recently restarted, after having been absent for a period of years. (Tr. 399.)

Nor is there evidence that Mr. Parker's dizziness or lightheadedness presents a significant limitation. Treatment notes indicate that the dizziness was attributable not to medication or to seizures, but to high blood pressure, which has since been brought under control, or to excessive heat or "stress." (Tr. 378, 385, 424.) Also, Mr. Parker denied experiencing dizziness in treatment notes. (See, e.g., Tr. 418, 426, 435, 439, 446.) Moreover, As the ALJ pointed out in his decision, "the treatment [Mr. Parker] received [for seizures] has been generally successful . . . ." (Tr. 33.) The record supports this conclusion as well. (Tr. 376-384

(seizures not listed among "Active Problems"), 385-388 (seizure disorder listed among "Inactive Problems"), 437-438 (seizure disorder "stable" with medication; no reference to seizures in recent weeks).) The ALJ specifically referenced those treatment notes, among others, in his decision. (Tr. 33.) There is no basis for incorporating, or even discussing, additional limitations attributable to seizures, including, among others, dizziness or lightheadedness.

The same is true for "a lack of energy" and memory problems. Aside from Mr. Parker's own statements, there is no support in the record for significant symptoms along these lines, much less evidence that might support any work-related limitations (let alone limitations beyond what the ALJ already found). Accordingly, no additional discussion was necessary.

4. **Third Assignment of Error**

Finally, Mr. Parker argues that this case should be remanded so that the Commissioner can consider new evidence. The sixth sentence of 42, United States Code, Section 405(g) provides:

> The court may, . . . at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the

> additional record and testimony upon which his action in modifying or affirming was based.

*Id.*

The statute requires a showing that the belatedly-submitted evidence is both "new" and "material," and that a plaintiff has "good cause" for failing to submit the evidence earlier. *Fagg v. Chater*, 106 F.3d 390 (Table), 1997 WL 39146, *2 (4th Cir. Feb. 3, 1997). The burden of showing that all of the sentence six requirements have been met rests with Plaintiff. *Id.*

Evidence is material if there is "a reasonable possibility that the new evidence would have changed the outcome" of the ALJ's decision. *Wilkins v. Sec'y of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1992). The evidence at issue is a consultative examination report from Dr. David Morris containing restrictions nearly identical to those included in the ALJ's residual functional capacity finding. (DE 11-4.) The only arguably different restriction is Dr. Morris' statement that Mr. Parker could walk for only four hours in an eight-hour workday. (DE 11-4, at 6.) As discussed, the ALJ properly omitted the NCDHHS' limitation to four hours of walking in an eight-hour workday and the record supports that finding. (Tr. 38.) Again, the state agency consultants' opinions state that Mr. Parker could sit, stand, or walk for up to six hours in an eight-hour workday, and Mr. Parker's other claims along these lines were deemed inconsistent with the other evidence in the record.

The evidence, therefore, is not material because, if considered, the outcome would have been the same.

Finally, the evidence presented by Plaintiff is the type of evidence that could and should have been presented earlier. Unlike evidence that is found during a surgery occurring after an administrative decision, the evidence at issue here could have been presented at the administrative level. In *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2164 (1991), the Supreme Court discussed the characteristics of a sentence six remand for new and material evidence, stating that in amending the sixth sentence of Section 405(g), "Congress made it unmistakably clear" that it intended to limit remands for "new evidence." *Id.* The Court further held that Congress added the "good cause" requirement to try to speed up the judicial process, "so that these cases would not just go on and on." *Id.* Plaintiff's failure to obtain this evidence before lodging this appeal is not good cause for failing to develop the evidence earlier. *See Rogers v. Barnhart*, 204 F. Supp. 2d 885, 892 (W.D.N.C. 2002) (denying remand because claimant did not "show good cause for not presenting such evidence at the administrative level"); *White v. Colvin*, No. 3:15-cv-00197-FDW, 2016 WL 3381265, at *3 (W.D.N.C. June 14, 2016) (affirming, in part, because claimant did not make the required showing of "good cause for why this evidence was not presented earlier").

Mr. Parker's only statement on this issue is that counsel representing him before this court "was not Mr. Parker's attorney of record at any time prior to the filing of the Complaint to initiate this action and is not able to offer any explanation why this examination was not made a part of the record previously." (Pl. Br. 13.) Because that statement concedes that there is no explanation for why this document was not made a part of the record at the administrative level, Mr. Parker has not met his burden to show good cause in support of his request for remand. This Court has noted that error or inadvertence by counsel cannot form the basis for the good-cause showing required to justify a sentence-six remand. *See Shaver v. Colvin*, No. 3:13-CV-00388-FDW, 2014 WL 3854143, at *4 (W.D.N.C. Aug. 6, 2014) (collecting cases).

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. *See Richardson v. Perales, supra; Hays v. Sullivan, supra*. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*, Plaintiff's Motion for Summary

Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) the Plaintiff's Motion for Summary Judgment is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: December 27, 2016

Graham C. Mullen
United States District Judge